*CONFIDENTIAL*

## RE: Request by the United States Government for Assistance in the Matter of NADER MODANLO
### (Reference: B 0203' 115 MAU)

**Presentation to:**
**Raphael Mauro, Attorney**
**FEDERATION OF JUSTICE (Switzerland)**

**By:**
**Lucius T. Outlaw III**
**Assistant Federal Public Defender**
**Office of the Federal Public Defender (District of Maryland, U.S.A.)**

**Date: June 5, 2012**

# **INTRODUCTION/OVERVIEW**

- The United States Government has requested that the Swiss Government continue to provide assistance in the investigation and prosecution of Nader Modanlo.

- Specifically, the United States Government has asked the Swiss Government to compel Swiss citizens to provide testimony for use in the trial of Nader Modanlo.

- Cooperation with this request is not authorized by the Mutual Legal Assistance Treaty between the United States and Switzerland.

- The request is in conflict with the Treaty's dual criminality requirement and limitations on use.

- Therefore, the Swiss Government should deny the request for compelled testimony.

# <u>KEY DATES</u>

- **AUGUST 2002:** U.S. Government begins investigating Nader Modanlo for illegal export of satellite and rocket technology to Iran from Russia.

- **JANUARY 8, 2004:** U.S. Government submits MLAT request to Russia

- **MAY 4, 2004:** U.S. Government applies for search warrants for Nader Modanlo's home and companies

- **MAY 7, 2004:** U.S. Government agents raid Nader Modanlo's home and companies and seize documents, computers, and etc.

- **JANUARY 12, 2006:** U.S. Government submits MLAT request to Switzerland

- **APRIL 25, 2006:** Swiss Government seeks clarification about technology Nader Modanlo is alleged to have illegally exported

- **JUNE 23, 2006:** U.S. Government asks court to suspend the statute of limitations applicable to case

- **AUGUST 23, 2006:** U.S. Government responds to April 25th request for clarification

- **SEPTEMBER 19, 2006:** Swiss Government finds that export allegations constituted a violation of Swiss Control of Goods laws

- **DECEMBER 5, 2006:** Swiss Government seeks specifics about the allegations raised by the U.S. Government to support finding that alleged offense(s) were committed in Switzerland

- **MARCH 8, 2007:** U.S. Government responds to December 5, 2006 request for information

- **JUNE 1, 2007:** Swiss Government enters decree to enter the case and provide assistance as requested by U.S. Government

- **JUNE 2, 2010:** U.S. Government files first indictment against Nader Modanlo

- **NOVEMBER 10, 2010:** U.S. Government files superseding indictment against Nader Modanlo

# MLAT REQUEST TO RUSSIA

TO:   The Central Authority of Russia

SUBJECT:   Request for Assistance in the Investigation of Nader MODANLO

authorities.   The United States Attorney for the District of Maryland is conducting a grand jury investigation into the activities of Nader MODANLO ("MODANLO") on charges of violating the Arms Export Control Act, Title 22, United States Code, Section 2778, which regulates the export of defense articles, defense services, and certain technical data from the United States; the International Emergency Economic Powers Act, 50 U.S.C. Sections 1701 and 1705, which prohibits the transfer of goods to designated hostile countries including Iran; Sections 1956 and 1957 of Title 18, United States Code, which generally prohibit money laundering transactions with proceeds of designated specified unlawful activities (SUAs), including violations of the Arms Export Control Act; and, the Foreign Corrupt Practices Act, 15 U.S.C. Section 78dd-1,

# APPLICATION FOR SEARCH WARRANT

AFFIDAVIT IN SUPPORT OF

APPLICATION FOR SEARCH AND SEIZURE WARRANTS

Special Agent Tonya Matney with the Department of Homeland Security, in Baltimore, Maryland, being duly sworn, deposes and states:

5.      Since August 2002, ICE agents and other agents from the DCIS and the FBI have been investigating a group of individuals that are suspected of the illegal export of satellite technology from the U.S. to Iran, and the illegal brokering of rocket launch technology to Iran from Russia.   Specifically, the investigation has focused on Nader MODANLO and the following of his associates: Ali ALADPOUSH, a/k/a Ali ALADPOOSH (hereafter ALADPOUSH), Ali AREFZADEH and Yakov SEGEL.   Your affiant believes that these individuals are allegedly attempting to illegally export low orbit satellite and/or missile technology to Iran.   The investigation also focused on certain corporate entities currently or previously operated by MODANLO.   Those corporate entities are FINAL ANALYSIS, INC. (herein after referred to as FAI), FINAL ANALYSIS COMMUNICATIONS SERVICES, INC. (herein after referred to as FACS) and NEW YORK SATELLITE INDUSTRIES, LLC. (herein after referred to as NYSI).

# APPLICATION FOR SEARCH WARRANT (cont.)

11.    Your affiant will show in this affidavit that probable cause exists to believe that these individuals have committed and conspired to commit violations of the following federal laws:

(a)    The Arms Export Control Act, Title 22, United States Code, Section 2778, regulates the export of defense articles, defense services, and certain technical data from the United States.  Promulgated thereunder is the International Traffic in Arms Regulations (hereinafter "ITAR") at Title 22, Code of Federal Regulations Sections 120-130, which contains, among other items the United States Munitions List (hereinafter "USML"). Section 2778(c) of Title 22 of the United States Code makes it a felony to violate any provision or section of 2778 or any regulation issued under that section.  Section 127.1(a)(3) of the Code of Federal Regulations is issued under 22 U.S.C. 2778 and prohibits conspiring to export, re-export, or cause to export or re-export any defense article for which a license or written approval is required by the subchapter without first obtaining the

# APPLICATION FOR SEARCH WARRANT (cont.)

required license or written approval from the Office of Defense Trade

Controls (ODTC). Persons or companies engaged in the export of items

included on the USML to all foreign countries, except Canada, must be

registered with the United States Department of State, Office of Defense

Trade Controls (22 C.F.R. Section 122.1). In addition to registration with

the Department of State, such persons or companies must apply for, and

obtain, a license from that agency for each specific item on the USML

exported to a foreign which is the intended final destination of the goods

(22 C.F.R. Section 123.1). A "defense article" is defined in 22 C.F.R.

Section 120.6 as any item or technical data appearing on the USML in 22

C.F.R. Section 121.1. Any person who intends to export a defense article

must first obtain Department of State (DOS) approval through the Office

of Defense Trade Controls (ODTC), unless an exemption applies.   22

C.F.R. 123.1(a).   DOS approval is also required to transship defense

articles from the United States through any third country, or re-export

them from that third country to any other destination.  22 C.F.R. 123.9(a).

# TOLLING APPLICATION

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

IN RE: GRAND JURY INVESTIGATION          MISC. NO. _____
     OF NADER MODANLO, et al.          (Filed Ex Parte and Under
                                           Seal)

### EX PARTE APPLICATION FOR SUSPENSION OF
### RUNNING OF STATUTE OF LIMITATIONS

    1.   A Grand Jury duly impaneled in this District has been conducting an investigation of Nader MODANLO and the following

Your applicant believes that these individuals have allegedly attempted to illegally export low orbit satellite and/or missile technology to Iran.   The

# TOLLING APPLICATION (Cont.)

(herein after referred to as NYSI). The investigation has focused on the following possible criminal offenses: violations under the Arms Export Control Act, Title 22, United States Code, Section 2778, and the attendant regulations promulgated thereunder, known as the International Traffic in Arms Regulations (hereinafter "ITAR") found at Title 22, Code of Federal Regulations Sections 120-130, which contains, among other items the United States Munitions List (hereinafter "USML"); the International Emergency Economic Powers Act, 50 U.S.C. Sections 1701 and 1705, which prohibits the transfer of goods to designated hostile countries including Iran; and, Sections 1956 and 1957 of Title 18, United States Code, which generally prohibit money laundering transactions with proceeds of designated specified unlawful activities (SUAs), including violations of the Arms Export Control Act. No indictment has been returned to date.

# MLAT REQUEST TO SWITZERLAND

TO: •,    The Central Authority of Switzerland

SUBJECT:    Request for Assistance in the Investigation of
Nader Modanlo, et al.

United States Attorney for the District of Maryland is
investigating whether Nader Modanlo; ███████████████
██████████████████████ Final Analysis Incorporated; Final Analysis
Communications Services, Inc.; New York Satellite Industries,
LLC; and Prospect Telecom, AG (collectively referred to as the
"Subjects") violated United States criminal laws by illegally
exporting defense articles, defense services, and certain
technical data from the United States; transferring goods to
hostile countries, including Iran; bribing foreign officials; and
laundering the proceeds of the unlawful activities.

# SWISS DEMAND FOR CLARIFICATION

Your reference: 182-19075
Our reference: B 0203115 MAU

Bern, 25. April 2006

**Request for assistance from the U.S. department of Justice of January 12, 2006 in criminal proceeding against Nader MODANLO, et al.**

Dear Mrs. Friedman

We refer to the above request for assistance which you transmitted to us via the letter of January 25, 2006.

Since it is questionable whether the acts described in the request for assistance constitute an offence under Swiss Criminal Law and therefore compulsory measures can be applied, we forwarded the request for assistance to the appropriate federal office that is in charge of the prosecution of violation of export control regulations [and ask] for comment. The federal office informed us that first it has to be clarified whether the export of these satellite technology or equipment falls under the licensing requirement of Swiss legislation. They consider it necessary to collect additional information in order to answer this question.

Therefore, we ask the requesting office to answer the following questions:

In the request for legal assistance it is referred to the regulations of the "International Emergency Economic Powers Act, IEEPA" and to the Arms Export Control Act (AECA) / ITAR / U.S. Munitions List.

1. In which international control regime are the goods mentioned in the request for assistance subject to licensing [or approval]? It may likely be the Wassenaar Arrangement (WA) or the Missile Technology Control Regime (MTCR).

2. Under which list item (category, number) of the original list of these export control regimes the aforementioned goods/technologies fall?



# U.S.'S CLARIFICATION OF ALLEGATIONS

I am in receipt of a letter from the Swiss Federal Department of Justice and Police, dated April 25, 2006, which asked for additional information related to the Mutual Legal Assistance Treaty request of the United States, dated January 25, 2006 ("the MLAT request"), in connection with its investigation of Nader Modanlo. That letter was forwarded to the United States Attorney's Office for the District of Maryland for a response. The Swiss letter sought the answer to two questions. The questions, as translated into English, and the English responses, are provided below.

1.   Which international export control regime documents the articles/technologies referred to in the request for assistance as being subject to approval? It should most likely be the Wassenaar Arrangement (WA) or the Missile Technology Control Regime (MTCR).

Answer: It is the Missile Technology Control Regime (MCTR).

2.   Which list item (category, number) of the original list of these export control regimes includes the referenced articles/technologies?

Answer: The referenced articles/technologies are found in Category I, Item 1, specifically under 1.A.1, "Complete Rocket Systems" and under 1.E, "Technology."

I would ask that these answers be forwarded to the Swiss so that they might expeditiously respond fully to the MLAT request.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _David I. Salem_

David I. Salem
Assistant United States Attorney

# <u>SWISS GOVERNMENT RELIED ON REPRESENTATIONS</u>

Date   19. September 2006

**Request for assistance of the U.S. department of Justice of January 12, 2006 in the case of MODANLO Nader et al. for the violation of the Arms Export Control Act**

Dear Mr. Fabbri

Many thanks for your letter of September 11, 2006 with the answer of the U.S. authori-ties in connection with the issue of licensing.

According to the statements of the U.S. authorities the mentioned goods/technologies are listed on the MTCR (Missile Technology Control Regime) list. This means that the export of such goods out of Switzerland is subject to the licensing requirement under Article 3 of the Ordinance [legislation] of the Control of Goods (Güterkontrollverordnung: GKV, SR 946.202.1) of June 25, 1997

Yours Sincerely,
Nonproliferation Department
Central Section
i. A. Partick Fournier

# SWISS DEMAND FOR FURTHER CLARIFICATION

Your reference 182-19075
Our reference. B 203115 MAU
Berne, December 5, 2006

**U.S. Request for assistance made on January 12, 2006 in criminal proceedings against MODANLO Nader and others**

To be able to establish whether the behaviour of the defendants as described in the request falls under the above mentioned provision, we need additional information. The MLAT describes in details who were the executive, employees and the purpose of FAI/FACS. It also sets out how FAI became the first American company to launch a commercial satellite from a Russian launch facility. Finally, it describes the several wire transfers. **However, it does not contain enough information on the place, time and manner of the perpetration of the offence (i.e. the delivery/export or transhipment of the satellite technology to Iran) or the reasons why there is a reasonable suspicion that this offence has been committed.** On page 5 of the request, it is only outlined that "it appears that beginning in approximately 2000 and lasting until approximately 2003, FAI provided satellite equipment to Iran, trough Modanlo, Aladpoush, and Arefzadeh". **Therefore, please ask the requesting authority to provide us additional information, in particular to describe the modus operandi and to indicate the reasons why there is a reasonable suspicion that FAI has provided satellite equipment to Iran (trough Modanlo and others) during the time-period of three years.** If possible, it should also be indicated whether the defendants knew from the beginning that the articles would be transhipped to Iran (or intended to do this from the beginning/during the exportation phase to Russia). This would help us to ascertain whether there is a reasonable suspicion that an offence, which is also punishable here, has been committed and to exclude that the goal of the assistance sought is to discover incriminating material for the purpose of establishing later a suspicion of a criminal offence (which is not admissible according to the practice of the Supreme Court).

# U.S. RESPONSE TO DEMAND FOR FURTHER CLARIFICATION

March 8, 2007

BY Electronic Mail
Raphael Mauro, Esquire
Central Authority for U.S. Requests
Division of International Legal Assistance
Federal Office of Justice
Bundesrain 20
3003 Bern
Switzerland

Dear Mr. Mauro:

Re: Request to Switzerland for Assistance in the
Investigation of Nader Modanlo (B 02031 18 MAU)

As for illegal activities involving Iran, the evidence from multiple sources appears dispositive.
As a result of surveillance conducted on the targets meeting; analysis of travel documents, hotel
records, search warrant evidence, and civil trial testimony; statements of confidential sources;
and the subsequent guilty verdict found in civil court against MODANLO, it has 'been proven
that on at least four occasions the targets met and discussed the transfer of U.S. and Russian
satellite and/or missile technology to Iran and that the source of the funds was concealed through
a third country to avoid detection of this illegal activity. **We believe that the requested Swiss
records and interviews will leave no doubt that MODANLO exported U.S. and Russian
technology and was paid $10,000,000, contrary to Swiss law, as is described in the Missile
Technology Control Regime.**

# SWISS DECREE TO PROVIDE ASSISTANCE

**Decree to enter into the case**
of June 1,2007
of the Central Authority USA, Federal Office of Justice
U.S. Request for Legal Assistance in the matter of MODANLO Nader et al.

That the requesting authority is conducting a criminal proceeding against Nader Modanlo, Michael Ahan, Au Aladpoush et al for illegal export of satellite technology and satellite equipment (defense materiel) to Iran, with the Request for Legal Assistance and the supplement of March 8, 2007 (in the following: Supplement) being — roughly summarized — based on the following facts:

[It is alleged that] Nader Modanlo and Michael Ahan are owners of the company Final Analysis Incorporated (FAI, now New York Satellite Industries NYSI), a satellite communications company with headquarters in Maryland, as well as — together with other investors — owners of FAI's subsidiary, Final Analysis Communications Services, Inc. (FACS). FACS was established for the purpose of building, launching and operating satellites in a low orbit for wireless communications ("FAI satellites, FAISATS"). FACS had a permit for the export of satellite technology to Russia. It is alleged that the accused and other persons, in the years 2000 to 2003, exported satellite technology and satellite equipment to Iran without an appropriate permit and therefore violated the U.S. Arms Export Control Act.

# LIMITATIONS ON USE



Schweizerische Eidgenossenschaft
Confédération suisse
Confederazione Svizzera
Confederaziun svizra

Federal Department of Justice and Police FDJP
Federal Office of Justice FOJ
Swiss Central Authority

Swiss Confederation

IMAC FOJ, Bundesrain 20, 3003 Berne, Switzerland

FEDERAL EXPRESS

AUSA David Salem
U.S. Attorney's Office Of Maryland
6500 Cherrywood Lane
Suite 400
Greenbelt, MD 20770
USA

phone 301-344-4941
FedEx number: 1795-3437-1

Your reference:
Our reference: B 207114 MAU

Berne, December 15, 2008

US request for assistance dated January 12, 2008 in re ISCODANLO Nader et al.

Dear Mr. Salem,

Reference is made to the above mentioned request. Please find enclosed further documents resulting from its partial execution.

We would like to draw your attention to the fact that any information contained in these documents shall only be used as provided for by art. 5 of the Treaty.

# U.S. HAS ABANDONED DEFENSE MATERIAL/ARTICLES CLAIMS

*Charges In Pending Indictment:*

COUNT 1:       Conspiracy (to Violate Iran Trade Embargo)

COUNT 2:       Violation of the International Emergency Economic Powers Act (Iran Trade
               Embargo)

COUNT 3:       Violation of the International Emergency Economic Powers Act (Iran Trade
               Embargo)

COUNT 4:       Violation of the International Emergency Economic Powers Act (Iran Trade
               Embargo)

COUNT 5-10:    Money Laundering

COUNT 11:      Obstruction of Official Proceeding (Bankruptcy)

COUNT 12:      Obstruction of Official Proceeding (Bankruptcy)

**\*NONE** of the Counts allege the illegal export of missile or satellite technology
**\*NONE** of the Counts allege violations of the Arms Export Control Act
**\*NONE** of the Counts involve articles subject to the Missile Technology Control Regime (MTCR)

## U.S. HAS ABANDONED DEFENSE MATERIALS/ARTICLES CLAIMS (cont.)

### *Assistant U.S. Attorney David Salem During Court Hearing Held on May 9, 2012:*
"I take issue with Mr. Outlaw that the SMALL-SAT Agreement is critical to the case. I don't think it's critical to the case. There are other aspects of the case that are more significant certainly."
(Page 25, Lines 20-23)

"And Mr. Outlaw is just simply not correct that the SMALL-SAT Agreement is the heart of this case. The heart of this case is the relationship with the Iranians through the company known as Prospect Telecom in Switzerland. That's the heart of this case. And so the SMALL-SAT Agreement will have something to do with it. I'm not saying it won't not a piece of evidence.  That's why it's provided to them, but it certainly is not the heart of this case."
(Page 29, Lines 15-23)

### *U.S. Government's Opposition to Motion to Dismiss (filed May 25, 2012):*
"At the time the Tolling Motion was filed in 2006, [International Emergency Economic Powers Act] and money laundering violations were included in the listed violations provided to the Swiss Government in the Swiss MLAT Request, and to this Court in the Tolling Motion. That the pending Superseding Indictment did not also include Arms Export Control Act violations, or Foreign Corrupt Practices Act violations, is simply of no moment." (Page 4)

# U.S. VIEWS SWISS CITIZENS AS CO-CONSPIRATORS

***Assistant U.S. Attorney David Salem During Court Hearing Held on May 9, 2012:***

"And Mr. Outlaw is just simply not correct that the SMALL-SAT Agreement is the heart of this case. The heart of this case is the relationship with the Iranians through the company known as Prospect Telecom in Switzerland. That's the heart of this case."

- Prospect Telecomm was formed and managed by Swiss citizens:

  Urs Hausheer (of Hausheer and Partners)

  Arthur Schilter (formerly of Hausheer and Partners)

- Swiss citizen (Urs Hausheer) executed loan agreement between Prospect Telecomm and Nader Modanlo's company (New York Satellite)

# **<u>CONTINUED COOPERATION NOT WARRANTED</u>**

1) No Dual Criminality
   - U.S. Government has abandoned defense articles/materials allegations

   - No charges for violations of Arms Control Export Act

   - No charges related to violations of Missile Technology Control Regime

   - Currently prosecuting only charges tied to U.S. trade laws (Iran Trade Embargo)

   - Swiss law does not recognize U.S.'s Iran Trade Embargo laws

# <u>CONTINUED COOPERATION NOT WARRANTED (cont.)</u>

2) U.S. Government's Prosecution Exceeds Limitations on Use
   - U.S. Government using materials for prosecution that the Swiss Government did not agree to assist

   - Testimony will not be used for purpose identified in U.S. Government's MLAT request

3) U.S. Government Views Swiss Citizens as Co-Conspirators
   - Compelling testimony will force Swiss citizens to provide testimony that incriminates themselves

   - Continuing cooperation places Swiss citizens in jeopardy of possible prosecution by U.S. Government

END