# OFFICE OF THE FEDERAL PUBLIC DEFENDER
# DISTRICT OF MARYLAND

NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-0872

JAMES WYDA
FEDERAL PUBLIC DEFENDER

LUCIUS T. OUTLAW III
ASSISTANT FEDERAL PUBLIC DEFENDER

April 26, 2013

**VIA EMAIL & ECF**
Honorable Peter J. Messitte
United States District Court Judge
United States District Court for the District of Maryland
6500 Cherrywood Lane
Greenbelt, MD 20770

    Re: *United States v. Nader Modanlo* (10-0295)

Dear Judge Messitte:

    As counsel for Mr. Modanlo, I write in regards to a *Brady* disclosure made last evening by the Government (attached as Exhibit 1). For the first time ever, the Government has disclosed that the lead prosecutor (AUSA David Salem), the lead case agent (Special Agent Tonya Matney), and another agent (Agent Meredith Louden) met with Mr. Cyrus Nasseri (a co-defendant of Mr. Modanlo) in 2010. *See* Ex. 1. During that meeting Mr. Nasseri provided exculpatory information concerning Mr. Modanlo. *Id.* Specifically, Mr. Nasseri told the Government that in the year 2000, he and an Iranian government official sought Mr. Modanlo's assistance with "a number of Iranian satellites," but Mr. Modanlo refused. *Id.*

    As the Court is aware, the Government's theory is that Mr. Nasseri (a former Iranian government agent/official) was Mr. Modanlo's conduit for connecting with the Iranian government officials who Mr. Modanlo allegedly assisted by brokering a satellite agreement with Russia's Polyot. As such, Mr. Nasseri is a key figure in the Government's alleged conspiracy. The Government asked numerous questions of the Swiss witnesses (Mr. Hausheer and Mr. Zahedi) about Mr. Nasseri and his ties to Mr. Modanlo. And already the Government has introduced evidence at trial about Mr. Nasseri in an effort to tie him to Mr. Modanlo. The Government's late disclosure substantially undermines the Government's theory and case. It shows that while Mr. Nasseri may have *tried* to bring Mr. Modanlo and the Iranian government together for the benefit of Iran's satellite program, Mr. Modanlo rebuffed Mr. Nasseri's (and the Iranian government's) efforts. This information is clear *Brady* information.

    The Government's late disclosure of this *Brady* information, and the manner of its disclosure, raises significant concerns and issues that the Defense intends to raise the with Court. For starters:

*United States v. Modanlo* (10-0295)
Letter to Judge Messitte (Late *Brady* Disclosure)

### 1)   There is No Justification For The Government's Late Disclosure

The Government first indicted this case on June 2, 2010.  Dkt. No. 1.  Mr. Nasseri was indicated as a co-defendant of Mr. Modanlo.  *Id.*  According to the Government's disclosure, the lead prosecutor and the agents met with Mr. Nasseri in 2010.  So the Government has been aware of this exculpatory statement by Mr. Naseri since the case was first indicted nearly three years ago.  There is no justification for Defense to have not received this *Brady* information long before now.  There is certainly no justification for the Government providing after the trial has started.

Mr. Nasseri has been a key figure in the Government case from the start.  It is not plausible that the Government, i.e. the lead prosecutor and the lead case agent, simply forgot about an interview it conducted with Mr. Nasseri around the time of indictment.  Nor can this be a case of information getting the lost in the shuffle between case agents, or between a case agent and a prosecutor.  Here the lead prosecutor, the lead case agent, and another agent (who is sitting at Government's table during trial and is expected to testify) were all present during the interview of Mr. Nasseri.  There was no shuffle for this information to get lost in.

### 2)   The Late Disclosure Severely Prejudices the Defense

The disclosure of this important *Brady* information three days into trial has severely prejudiced the Defense.  By not being forthcoming with this information early on as it was obligated, the Government has unduly deprived the Defense from pursuing and developing this information with other witnesses and other sources of potential evidence.  The Government's disclosure failure has also deprived the Defense of valuable information that would have been used to develop our trial strategy and themes.  And it has deprived the Defense an opportunity to request (and if necessary, seek to compel) that the Government provide more discovery on the issue.

### 3)   *Ex Parte* Communications With The Court

Finally, in the email to Defense's counsel forwarding the disclosure letter, the lead prosecutor indicated that the Court ordered the disclosure after he "consulted with the Court." Ex. 2.  The Defense was not party to any discussion about the disclosure.  Therefore, the Government's consultation with the Court had to occur *ex parte.*  This is a serious concern for the Defense.  It is unclear to the Defense what basis permits the Government and the Court to discuss potential evidence without the participating of the Defense.  Until it is demonstrated that a basis exists, the Defense formally objects to such *ex parte* communications and consultations.

We ask for time today to more fully explore these issues (and the late disclosure generally) with the Court today.  So the Court and the Government are on notice, we are also considering what motions we may pursue in light of the late disclosure.

*United States v. Modanlo* (10-0295)
Letter to Judge Messitte (Late *Brady* Disclosure)

                                        Sincerely,

                                        -----------/s/-----------------

                                        Lucius T. Outlaw III
                                        Assistant Federal Public Defender

Enclosures

cc: all counsel of record (via ECF)