# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** \* | |
| \* | |
| v. \* | |
| \*  Crim. No. 10-0295 PJM | |
| **NADER MODANLO** \* | |
| \* | |
| Defendant. \* | |

## MEMORANDUM OPINION

In this multi-count criminal prosecution, the Government has charged Nader Modanlo with one count of obstructing an official proceeding (the "bankruptcy obstruction" charge). *See* 18 U.S.C. § 1512(c). It alleges that Modanlo lied to the Bankruptcy Court of this district about his relationship with a Swiss company, "Prospect Telecom AG." Modanlo claims that since the Bankruptcy Court has already rejected all allegations relevant to that relationship, the Government is collaterally estopped from relitigating the criminal bankruptcy obstruction charge now. The Court disagrees, and **DENIES** Modanlo's Motion to Dismiss Count 11 as Barred by Collateral Estoppel (Paper Nos. 152, 217, 284).[1] This Opinion elaborates upon the Court's earlier oral denial of the Motion.

I.

The range of charges against Modanlo are that (1) he violated the United States trade embargo on Iran, (2) laundered money, and (3) obstructed an official proceeding (the bankruptcy obstruction charge).[2] The bankruptcy proceedings in question were Modanlo's own bankruptcy

---

[1] Faced with an incomplete record, the Court asked the parties to supplement their initial filings on this Motion. (Paper No. 211)

[2] The Third Superseding Indictment was filed after the present Motion was filed, argued, and decided, but because the Second and Third Superseding Indictments are identical as to the bankruptcy obstruction charge, and because Modanlo resubmitted his Motion after the Third Superseding Indictment was filed (Paper No. 284), the Court refers to the latest Indictment.

1

as well as that of his wholly-owned company, New York Satellite Industries LLC ("NYSI"). According to the Government, Modanlo brokered an illegal deal between representatives of the Iranian Government and POLYOT, a Russian state-owned aerospace enterprise company, for the design, construction, and launch of a small, low-earth orbiting satellite and its accompanying ground station. In exchange for brokering the deal, says the Government, Modanlo was paid $10,000,000. Further, Modanlo and his co-conspirators are said to have concealed the Iranian Government's involvement in the deal by forming a Swiss front company known as "Prospect Telecom AG," through which the $10,000,000 was wired to NYSI's bank account in Bowie, Maryland. Although the $10,000,000 was dressed as a legitimate business loan from Prospect Telecom to NYSI, the Government maintains that it was actually a payment for Modanlo's services in brokering the Russia-Iran satellite deal. With respect to the bankruptcy obstruction charge, the Government's core allegation is that Modanlo lied to the Bankruptcy Court about the extent and nature of his relationship with Prospect Telecom and its beneficial owners.

Some context is in order.

When Modanlo ostensibly defaulted on the $10,000,000 loan, Prospect Telecom filed a replevin action against him in the District Court of Maryland in Montgomery County seeking to retrieve the collateral Modanlo had posted for the loan, namely shares in another wholly-owned Modanlo company, Final Analysis Communication Services, Inc. ("FACS"). Modanlo failed to defend against the replevin action, which led the state court to enter an order requiring him to deliver the FACS shares to Prospect Telecom. At the time, FACS appeared to have significant value because it had received a substantial jury verdict against General Dynamics Corporation in this federal district court. *See Final Analysis Communications Services, Inc. v. General Dynamics Corp.*, 253 F. App'x 307, 311 (4th Cir. 2007) ("[T]he jury found that General

Dynamics committed an unjustified breach . . . and awarded $21.87 million in compensatory damages for each breach and a total of $92.75 million in consequential damages.").

Modanlo filed his personal Chapter 11 bankruptcy in July 2005. Questions arose during the bankruptcy proceeding regarding Modanlo's transfer of the FACS shares to Prospect Telecom and whether it amounted to an illegal transfer to a creditor outside the bankruptcy proceeding. Accordingly, Bankruptcy Judge Nancy Alquist appointed Christopher Mead, Esquire, an attorney in private practice, to serve as the Chapter 11 Trustee. Mead, a former federal prosecutor, eventually filed a petition as Trustee to place NYSI into Chapter 11 bankruptcy.

From the beginning of his tenure as Trustee, Mead communicated to the Bankruptcy Court his suspicions regarding the bona fides of Modanlo's transfer of the FACS shares to Prospect Telecom, including, for example, the following:

> [Modanlo] claimed that Prospect Telecom was an independent entity that had actually loaned NYSI $12 million [sic] and that on behalf of NYSI he would reduce FACS' debt to that entity for that loan as part of the settlement agreement and that represented an arm's-length economic transaction. . . . And all of that, I believe, was fraudulent, [and] reflected his attempts to pursue his personal self-interest above that of the corporation, and, I mean, it's – a lot of it was just flat lies. I mean, I don't . . . know . . . how else to explain the Prospect Telecom deal other than to say this is one of the most blatant frauds I've ever seen engineered in a court and Mr. Modanlo, in my judgment, was the person behind that.

Mead also took his fraud allegation to another level. Having filed an adversary proceeding against Prospect Telecom,[3] he undertook discovery from Prospect Telecom about the NYSI loan, including questioning Modanlo under oath and at length about the transfer of the FACS shares to Prospect Telecom. Modanlo denied all allegations of fraud, and stated that in fact he had no preexisting relationship with Prospect Telecom at the time of the $10 million loan.

---

[3] An adversary proceeding is essentially "[a] proceeding to recover money," *In re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 482 n.1 (4th Cir. 1992), and it is governed by Rule 7001 of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7001.

3

During the welter of litigation that characterized the NYSI and Modanlo bankruptcies, the Bankruptcy Court made four rulings that hold special significance for purposes of evaluating the pending Motion to Dismiss: (1) the Court granted Modanlo's motion to dismiss the bankruptcy cases, ending the proceedings; (2) the Court did not grant Mead's motion for the sale of certain legal claims Modanlo and his company had won in the Circuit Court for Montgomery County; (3) the Court entered default judgment against Prospect Telecom in the adversary proceeding Mead filed against Prospect Telecom regarding Modanlo's transfer of the FACS shares; and (4) the Court granted Modanlo's motion for authority to pursue an appeal of a verdict entered against him in a civil case in the Circuit Court for Montgomery County.  In August 2009, Judge Alquist dismissed the NYSI and Modanlo bankruptcies.

The Government alleges that during his own bankruptcy proceedings Modanlo, under oath, made a number of specific fraudulent statements pertaining to Prospect Telecom's formation and purpose, his relationship to the Iranian nationals who were the beneficial owners of Prospect Telecom, and the true nature of the $10,000,000 payment.  According to the Government, Modanlo allegedly testified that:

- Prospect Telecom's loan to NYSI was not a quid pro quo for anything he did for it or for any of its owners;

- Neither he nor his family ever received any money as consideration for his assistance to foreign entities to obtain technology or rights to certain technology;

- Modanlo was introduced to Prospect Telecom by Ron Davidson, a consultant for FACS;

- Prior to receiving the $10 million loan from Prospect Telecom, Modanlo had only met one of the attorneys associated with Prospect Telecom, *viz.*, Urs Hausheer, to whom he was introduced by Ron Davidson; and

- Modanlo was not involved in the creation of Prospect Telecom, which existed prior to his involvement with it.

Modanlo argues that the Bankruptcy Court's four referenced rulings collaterally estop the Government from prosecuting him for lying to that Court about his relationship with Prospect Telecom, its owners, and the true nature of the $10 million payment.

II.

Collateral estoppel, also known as issue preclusion, "precludes the relitigation of issues actually litigated which were necessary to the outcome of the first action." *United States v. Mumford*, 630 F.2d 1023, 1027 (4th Cir. 1980) (citation omitted). Its dual purposes are to protect litigants from the burden of relitigating issues while promoting judicial economy. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). To invoke collateral estoppel, a party must satisfy five elements: (1) "the issue sought to be precluded is identical to one previously litigated"; (2) "the issue was actually determined in the prior proceeding"; (3) "the issue's determination was a critical and necessary part of the decision in the prior proceeding"; (4) "the prior judgment is final and valid"; and (5) "the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006).[4]

In this case, the Court focuses on the second and third elements. Although the "actual determination" and "necessity" prongs are commonly discussed as discrete elements, in practice they are sufficiently intertwined such that the Court may address them together. *See* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4421 (2d ed. 2002).

---

[4] The parties' briefing suggests that either Maryland law or federal Double Jeopardy law applies. *See generally Ashe v. Swenson*, 397 U.S. 436 (1970). Both suggestions are off the mark. Maryland law is inapplicable because both the bankruptcy proceeding and the present criminal proceeding are federal in nature and involve no state law questions. Federal Double Jeopardy law is also inapplicable because the prior proceeding was civil in nature, whereas the present proceeding is criminal. Instead, "[t]he preclusive effect of a federal-court judgment is determined by federal common law." *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008). The Court, therefore, applies the federal common law of collateral estoppel.

The "actual determination" element requires that the prior court have actually decided the issue that arises in the subsequent court. The burden of making that showing is on the party seeking preclusion. *Id.* § 4420. "Mere prior litigation of an issue without a decision does not justify preclusion when the same issue arises under a different claim or cause of action." *Id.*

The "necessity" element requires that the issue sought to be precluded was "necessary to support the judgment entered in the first action." *Id.* § 4421. This, too, is an evidentiary burden for the party seeking preclusion. Even where the issue was previously fully litigated and the prior court has made a pertinent finding, "the prior judgment will not foreclose reconsideration of the same issue if that issue was not necessary to the rendering of the prior judgment, and hence was incidental, collateral, or immaterial to that judgment." *Halpern v. Schwartz*, 426 F.2d 102, 105 (2d Cir. 1970).

A.

A threshold issue in this case is whether the collateral estoppel doctrine has any application where the issue sought to be precluded was originally litigated in a federal bankruptcy proceeding, and the litigant thereafter seeks to estop the Government from relitigating it in a federal criminal prosecution. Although courts more commonly consider the application of collateral estoppel with respect to an issue litigated in two civil cases, *see, e.g., In re Microsoft Corp. Antitrust Litigation*, 355 F.3d 322, 324–25 (4th Cir. 2004), or in two criminal cases, *see, e.g., United States v. Bankahla*, 530 F.3d 300, 306–07 (4th Cir. 2008), the doctrine has in fact been applied – albeit, rarely – in a criminal case when the issue sought to be precluded was initially litigated in a civil case. The Fourth Circuit has observed that the reason for this is because "[s]eldom does the government, having had an issue determined adversely to it in a civil

action with the less demanding burden of proof, institute criminal proceedings on the same facts and issues against the same party." *Mumford*, 630 F.2d at 1027.

Regardless of its rarity, both the Government and the defense acknowledge that collateral estoppel may bar the Government from litigating, in a criminal case, an issue previously litigated and decided in a civil bankruptcy proceeding. They recognize that the policies underlying the doctrine of collateral estoppel, namely, the protection of parties from the burden of relitigating certain issues and the conservation of judicial resources, are no less compelling simply because the proceedings may be dissimilar with respect to the jurisdictional scope, or because one court is an Article III court and the other is a creature of statute. And indeed, this view has been adopted by the Fourth Circuit. *See United States v. Tatum*, 943 F.2d 370, 382 (4th Cir. 1991) (noting that collateral estoppel "can be applied" in a criminal bankruptcy fraud case to prevent litigation of issues decided during the previous bankruptcy). That said, is the Government collaterally estopped as to the bankruptcy obstruction charge here?

B.

Modanlo says yes. To repeat: He asserts that the issue of whether his representations to the Bankruptcy Court regarding his relationship with Prospect Telecom were fraudulent was raised, litigated, and decided by the Bankruptcy Court. Again, he cites four rulings by the Bankruptcy Court as having preclusive effect: (1) its ruling granting Modanlo's motion to dismiss the bankruptcy cases; (2) its decision not to grant Mead's motion for the sale of legal claims the Modanlo bankruptcy estate had won in the Circuit Court for Montgomery County; (3) the adversary action initiated by Mead against Prospect Telecom that resulted in entry of default judgment against Prospect Telecom; and (4) the Bankruptcy Court's order granting Modanlo's

motion for authorization to pursue appeal of a verdict entered against him in a civil case in the Circuit Court for Montgomery County.

The Government submits that in none of these proceedings did the Bankruptcy Court actually decide whether Modanlo's representations regarding his relationship with Prospect Telecom were fraudulent. Nor, it says, was the truthfulness of Modanlo's representations necessary to any of the Bankruptcy Court's rulings. Further, the Government argues, it never "had a full and fair opportunity to litigate the issue" in the Bankruptcy Court because Trustee Mead did not have the benefit of a criminal investigation.

The Court agrees with the Government. At no point in the bankruptcy proceedings did the Bankruptcy Court actually decide whether Modanlo had misrepresented his relationship with Prospect Telecom. Similarly, whether or not Modanlo's misrepresentations were fraudulent was not necessary to the Bankruptcy Court's resolution of any of the Court's rulings he identifies. Because these arguments are independently sufficient to warrant denial of the Motion, the Court finds it unnecessary to consider the Government's third argument regarding "full and fair litigation" of the fraud issue. The Court explains.

1.

In granting Modanlo's motion to dismiss the bankruptcies, the Bankruptcy Court did not actually decide whether he had obstructed, influenced, or impeded the bankruptcy proceedings. *See* 18 U.S.C. § 1512(c) ("Whoever corruptly . . . obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both."). The record is clear that the only reason the Bankruptcy Court granted the motion is because no one opposed it. Both Mead and Lynn Kohen, the representative of the Office of the United States Trustee, stated on the record that they did not oppose Modanlo's

motion to dismiss. The Bankruptcy Court, in its oral ruling at the end of the hearing, specifically held that the parties' unwillingness to oppose Modanlo's motion was the basis for dismissing the cases, observing that "all parties opposing or previously opposing this matter [had] appeared and [had] represented to the Court that they [were] not going to mount an opposition to Mr. Modanlo's motion to dismiss this case." This is hardly tantamount to finding that Modanlo made no fraudulent misrepresentations regarding his relationship with Prospect Telecom. *See United States v. Int'l Bldg. Co.*, 345 U.S. 502, 505-06 (1953) ("A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.").

Still, Modanlo maintains that Mead's allegations of fraud so pervaded the bankruptcy proceedings that the Bankruptcy Court could not possibly have dismissed the proceedings without considering and rejecting those allegations. For example, he says, Mead acknowledged that "he had "expressed . . . a very strong preliminary opinion that [Modanlo] had committed multiple frauds in connection with [his] management of FACS and in connection with [his] bankruptcy estate." Modanlo submits that this statement, along with similar statements by Mead, establish that the Bankruptcy Court rejected the merits of Mead's allegations of fraud.

The Court disagrees. The record simply does not indicate whether, if at all, the Bankruptcy Court considered and resolved any of Mead's allegations of fraud. The Bankruptcy Court's final written order dismissing the cases was general in nature, stating only that the cases "are hereby dismissed," containing no further explanation. This general, essentially form language, does not equate to a finding by the Bankruptcy Court regarding the truthfulness of Modanlo's representations about his relationship with Prospect Telecom. The Court declines to

"distill special findings from a general" statement such as this, *Board of County Supervisors of Prince William County, Va. v. Scottish & York Ins. Services, Inc.*, 763 F.2d 176, 179 (4th Cir. 1985), and declines to preclude a criminal prosecution with respect to the purportedly false statements. *See O'Reilly v. County Board of Appeals for Montgomery County, Md.*, 900 F.2d 789, 792-93 (4th Cir. 1990) ("Because the language of the [prior court's] opinion is ambiguous, we cannot say with any degree of certainty that it decided the identical issue raised in [the current] action.").

2.

Modanlo's second argument amounts to a slight variation on the first. He contends that the Bankruptcy Court's decision not to grant Mead's motion for the sale of legal claims Modanlo had won in the Circuit Court for Montgomery County constituted a rejection of Mead's allegation that Modanlo's representations regarding Prospect Telecom were fraudulent. Although Modanlo is correct that, in the course of the bankruptcies, Mead contended that Modanlo misrepresented his relationship with Prospect Telecom, the record again fails to establish that the Bankruptcy Court actually considered or decided the merits of those allegations. All this Court has before it is the fact that the Bankruptcy Court dismissed the bankruptcies because the parties consented to the dismissal, which had the necessary effect of mooting Mead's motion for the sale of claims.

Apart from this, the apparent basis for Mead's request for the sale of the claims was not that Modanlo had made fraudulent misrepresentations, but rather that the proposed sale would be "in the best interests of the" bankruptcy estates, that it was "proposed in good faith," and that "the purchase price [was] fair and reasonable." Thus, assuming *arguendo* that the Bankruptcy Court effectively decided Mead's motion in part because it concluded that Modanlo had not lied,

the basis for its denial could as well have been that sale of the claims was not in the estates' best interests, as opposed to the rejection of any allegation of fraud on Modanlo's alleged part.

Finally, Mead's allegations of fraud in connection with his motion for sale of claims went to whether Modanlo had misrepresented his relationship with Prospect Telecom not to the Bankruptcy Court but *to the Circuit Court for Montgomery County*. The crime of which Modanlo is charged in this Court is obstruction of "any official proceeding," 18 U.S.C. § 1512(c)(2), defined by statute as a *federal* proceeding. 18 U.S.C. § 1515(a)(1). Whether Modanlo may have made misrepresentations to a state court is beside the point.

3.

Modanlo also argues that Mead's adversary action against Prospect Telecom, which resulted in the entry of default judgment against Prospect Telecom by the Bankruptcy Court, estops the Government from litigating the fraud allegations involving Modanlo and Prospect Telecom as part of the bankruptcy obstruction charge in this Court. This argument avails Modanlo not at all. Because the adversary action resulted in a default judgment, it has no preclusive effect. As the Fourth Circuit, reviewing various authoritative sources,[5] has observed, "default judgments do not possess collateral estoppel effect." *Sartin v. Macik*, 535 F.3d 284, 289 (4th Cir. 2008) (applying North Carolina law). Accordingly, Mead's adversary action against Prospect Telecom does not preclude the Government from pursuing its prosecution in the bankruptcy obstruction charge.

4.

The fact that the Bankruptcy Court authorized Modanlo to pursue an appeal of a verdict entered against him in the Circuit Court for Montgomery County also says nothing at all about the Bankruptcy Court's view, if any, of whether Modanlo's representations regarding his

---

[5] *See*, *e.g.*, Restatement (Second) of Judgments § 27 cmt. e (1982).

relationship with Prospect Telecom were fraudulent. Again, all the record indicates is that Mead did not oppose pursuit of the appeal. In fact, he *consented* to it "so long as the bankruptcy estate [did] not incur any expenses as a result." The Bankruptcy Court did not actually decide whether Modanlo made fraudulent representations because it had no need to do so.[6]

Modanlo remains insistent. Mead, he says, made allegations of fraud in his response to Modanlo's motion, and the Bankruptcy Court, in not embracing those allegations, effectively rejected them on the merits. But this argument finds support neither in the record nor in logic. Consider: A litigant submits a garden variety motion for an extension, and the adverse party consents to the request, but at the same time blames the movant for causing the delay in bad faith, simply to gain time. If the court, without saying more, grants the motion, it can hardly mean the court has decided the bad faith allegation. Modanlo's argument suffers from the same defect. He seeks to construct from a court's silence a merits ruling on stray comments made during a proceeding.

C.

Overall, throughout his filings, Modanlo cites a variety of statements made during the bankruptcies that he suggests must have led to Bankruptcy Court rulings that estop the Government from criminally prosecuting him for bankruptcy obstruction. For example, he isolates Mead's testimony that he (Mead) did not know "how else to explain the Prospect Telecom deal other than to say this is one of the most blatant frauds I've ever seen engineered in a court and Mr. Modanlo, in my judgment, was the person behind that." Further, Modanlo emphasizes that Mead took substantial discovery during the adversary proceeding from Prospect

---

[6] Mead may have "prefer[red]" that the Bankruptcy Court adjudicate the Prospect Telecom adversary proceeding and the motions to dismiss the FACS bankruptcy before permitting the appeal to proceed, but those were simply *preferences*, offering the Bankruptcy Court no opportunity to adjudicate the truth or falsity of Modanlo's representations.

Telecom's lawyers in an attempt to determine whether the transfer of the FACS stock in the replevin action was fraudulent, and notes emphatically that Mead, a former federal prosecutor, was chosen as the Trustee precisely because the Modanlo bankruptcies raised possible criminal problems as far as the Bankruptcy Court was concerned.  Finally, Modanlo invites attention to the Bankruptcy Judge's comments personally complimenting him on the way he conducted himself during the bankruptcy proceedings.

Whatever these considerations may imply, what they do not do is establish that there were final and valid judgments in the Bankruptcy Court that suffice to estop the Government from prosecuting Modanlo on the bankruptcy obstruction charge in the present proceeding.

The Court **DENIES** Modanlo's Motion to Dismiss Count 11 as Barred by Collateral Estoppel (Paper Nos. 152, 217, 284).

A separate Order will **ISSUE**.


/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**Date:  May 1, 2013**