IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Criminal No. PJM-10-0295 |
| NADER MODANLO et al. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MOTION TO COMPEL *BRADY* DISCOVERY
AND INSTRUCTION TO JURY**

Mr. Nader Modanlo, by and through his undersigned counsel, hereby moves this Honorable Court pursuant to Rule 16 of the Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny for the following:

1) An order requiring the Government to produce redacted versions of its memorandum and notes of its 2010 interview of Cyrus Nasseri, disclosing those portions that pertain to Mr. Naseri's statement about Mr. Modanlo that was the subject of the Government's recent *Brady* disclosure. *See* Ex. 1 (disclosure letter); *see also* Dkt. No. 333.

2) An instruction informing the jury that Mr. Naseri made the statement referenced in paragraph (1) above.[1]

**BACKGROUND**

As the Court is well aware of recent events, the background for this Motion will be brief. After the third day of trial in this case concluded, the Government disclosed for the first time that its lead prosecutor (AUSA David Salem), its lead case agent (Special Agent Tonya Matney), and

---

[1] This Motion does not supersede, waive, or withdraw the Defense's oral motion to dismiss due to the Government's *Brady* violation. A written motion to dismiss will be filed as requested by the Court.

1

another agent (Agent Meredith Louden) met with Mr. Cyrus Nasseri (a co-defendant of Mr. Modanlo) in 2010.  *See* Ex. 1.  During that meeting, Mr. Nasseri provided exculpatory information about Mr. Modanlo. *Id.*  Specifically, Mr. Nasseri informed the Government that in 2000, the Iranian government approached Mr. Modanlo with a request for assistance in developing Iran's satellite program, and Mr. Modanlo refused, citing risks to his business in the United States.  *Id.*  The Defense promptly moved to dismiss the Indictment based on the Government's failure to timely disclose this critical exculpatory information.

During a conference with the Court held on April 29, 2013, the Government attempted to explain its late disclosure of this *Brady* information.  *See* Dkt. 335.  The Government also explained that the memorandum of the interview of Mr. Nasseri implicated national security interests, and therefore it objected to producing the memorandum even though the memorandum (and the information in it) was declassified in August 2010.  Defense counsel were excluded from the portion of the conference in which the Government explained why a declassified document should be protected from disclosure in the interests of national security.

The Court has reserved ruling on the Defense's *Brady* motion to dismiss until the end of trial.  In the meantime, the Government has continued to introduce evidence about Mr. Nasseri through nearly every witness that has testified.  The government has sought through multiple witnesses to establish that Mr. Nasseri was an Iranian government official; that Mr. Nasseri had a longstanding and secretive relationship with Mr. Modanlo; that Mr. Nasseri put the government of Iran in contact with Mr. Modanlo for purposes of facilitating a satellite contract; that Mr. Nasseri brought in Mr. Urs Hausheer, a Swiss lawyer, to create and manage the Swiss company Prospect Telecom for the purpose of concealing the transaction; and that Mr. Nasseri engaged a Swiss banker, Medhi Zahedi, to manage Prospect Telecom's account, including its allegedly unlawful transfer of funds to Mr. Modanlo's company in the United States.  Nearly every former employee of Mr. Modanlo that has taken the stand has testified about Mr. Nasseri.  Messrs. Hausheer and Zahedi both testified about Mr. Nasseri.  And Mr. Nasseri's name appears throughout the documents that the government has

introduced into evidence through case agents and others.  In short, Mr. Nasseri is the glue that the government is using to put together the different pieces of its case.

## ARGUMENT

I. **No Remedy Short of Dismissal Can Cure the Prejudice to Mr. Modanlo.**

There is no cure for the prejudice that the defense has suffered as a result of the Government's extremely late disclosure of the exculpatory information provided by Mr. Nasseri in 2010.  In light of the central role that Mr. Nasseri plays in the Government's case, the significance of his statement – that Mr. Modanlo in fact <u>refused</u> to participate in an illicit transaction that the Government of Iran sought to carry out – is undeniable.  And the significance is magnified by the fact that no witnesses with direct knowledge of the contemplated transaction have testified or are expected to testify in the Government's case.

Had the Defense been provided with this information in a timely fashion, it would have been put to great use during the Defense's pretrial investigation and formulation of the Defense's trial strategy.  For instance, if the Government had produced the information in 2010 (when it possessed the information and was obligated to produce it), the Defense could have used the intervening years to obtain a Rule 15 deposition of Mr. Nasseri to obtain his sworn testimony for trial, and to further explore the facts and circumstances surrounding the encounter with Mr. Modanlo that he discussed with the Government.  Instead, the Government sought and obtained multiple postponements of trial, over the Defendant's vigorous objections, in order to obtain its <u>own</u> Rule 15 depositions, all the while sitting on information that would have allowed the Defense to avail itself of the same opportunity.

The Defense's forthcoming motion to dismiss will show why the dismissal is the only adequate remedy under these circumstances.  However, in the meantime, the Government continues to add to the prejudicial effect of its untimely disclosure, by putting exhibit after exhibit and witness after witness before the jury to link Mr. Nasseri to Mr. Modanlo and the alleged conspiracy.  The Defense, on the other hand, has no means to put Mr. Nasseri's exculpatory statements before the

jury. Seeking a Rule 15 deposition of Mr. Nasseri at this juncture, mid-trial, would not be feasible. Indeed, it took the U.S. Government, with all of its resources, more than six months to obtain the testimony of its Swiss witnesses pursuant to Rule 15 – an undertaking that simply cannot be done while a jury is empaneled.[2]

## II.     In the Interim, the Court Can and Should Formulate Other Ameliorative Measures.

Because the Court has indicated that it will not rule on Mr. Modanlo's Motion to Dismiss until after trial, the Defense herein requests interim relief. The modest remedies sought by this Motion are the only steps available within the confines of the ongoing trial setting to address some of this undue prejudice – and they are not a cure.

### A.     Production of the Redacted Memo and Notes Is Appropriate Under the Circumstances and Is Required by *Brady*.

---

[2] For these reasons, the Defense has not requested a continuance of trial to redress the Government's late disclosure. To obtain a Rule 15 deposition of Mr. Nasseri – or to conduct any meaningful investigation at all into the newly provided information – would take months or longer and thus could not be completed while a jury is empaneled. Mr. Nasseri's precise whereabouts are unknown to the Defense. We know only that international travel would be required to take his testimony, logistics would be complex, and if he is not willing to appear voluntarily, the cooperation of international governments will be required to compel him to appear. In the case of the Swiss witnesses whose deposition testimony the Government has presented to the jury in this case, depositions were not conducted until March 2013, notwithstanding that the Government set the process in motion years earlier. The Court made clear in its earlier ruling on the Government's motion for a further continuance of the trial date that the jury panel could not be kept waiting indefinitely. Under these circumstances, a continuance would be futile.

Moreover, a continuance would be prejudicial to Mr. Modanlo, whose day in Court has already been deferred too long. Mr. Modanlo vociferously opposed, as a violation of his speedy trial right, among other things, the last two rounds of continuances sought by the Government. In overruling Mr. Modanlo's objections, the Court was clear that no further delays would be permitted. The Defense could have sought and conducted a Rule 15 deposition of Mr. Nasseri in a timely fashion without the need for any delay if the Government had complied with its constitutional obligation to disclose Mr. Nasseri's statement in a timely fashion, three years ago. Mr. Modanlo should not be compelled to choose between his constitutional right to a speedy trial and his constitutional right to present a defense by making use of plainly exculpatory evidence belatedly disclosed by the Government.

Courts that have addressed the issue have widely held that the prosecution's obligation under *Brady* is to provide not just "summaries" of exculpatory information obtained by the Government, but rather to produce the documents themselves memorializing this information, whether they take the form of memoranda or notes of case agents or prosecutors.  As one Court has explained:

> Summaries of conversations prepared by the government are not the equivalent of actual notes for several reasons. First, summaries invariably involve a process of interpretation and characterization. That is the essence of a summary. Different individuals may hear or read the same words and summarize their meaning differently. Second, context, emphasis, and subtle distinctions may not be precisely captured by summaries. For example, it may be significant that a witness repeated an answer multiple times. The general topics being discussed at the time a statement is made may also explain the statement. Third, because the government is not necessarily privy to the defense's strategy, seemingly innocuous or immaterial statements by a witness may not be included in a summary. These seemingly innocuous or immaterial statements may, because of different facts known to the defense, be important for purposes of impeachment.

*United States v. Park*, 319 F. Supp. 2d 1177, 1179 (D. Guam 2004) (Pregerson, J., sitting by designation).

For these reasons, numerous courts have held that the government does not satisfy its *Brady* obligations merely by providing a synopsis of exculpatory information memorialized in its notes and memoranda.  *See, e.g.*, *id.*; *United States v. Triumph Capital Group, Inc.*, 544 F.3d 149, 161-65 (2d Cir. 2008) (holding that government's failure to produce agent's proffer notes violated *Brady* and required new trial); *United States v. Service Deli Inc.*, 151 F.3d 938, 943 (9th Cir. 1998) (holding that production of summary of attorney's interview notes instead of notes themselves violated defendant's rights under *Brady* and required new trial); *United States v. Bergonzi*, 216 F.R.D. 487, 499 (N.D. Cal. 2003) (rejecting government's argument that it could summarize exculpatory information, and requiring production of government's memoranda).  Indeed, the Second Circuit remarked, in holding that a new trial was warranted for failure to produce an agent's proffer notes, that the fact that the drafting agent "was the case agent during the investigation and at trial renders the nondisclosure of his notes of the attorney proffer especially difficult to comprehend." *Triumph Capital Group*, 544 F.3d at 162.

Here, similarly, the Government is required, at minimum, to produce the portions of its interview memorandum and notes that pertain to Mr. Nasseri's exculpatory statement about Mr. Modanlo. Its terse summary (*see* Ex. 1) is not an adequate substitute for these materials. The Defense is entitled to an opportunity to confirm that the Government's account is complete and accurate. It seems inconceivable that during the interview with Mr. Nasseri that the Government did not seek more details about the encounter in 2000 between Mr. Nasseri, the Iranian Government official, and Mr. Modanlo than are reflected in its one-sentence *Brady* disclosure. For instance, the Government certainly inquired about: (1) where the encounter occurred; (2) which Iranian government official(s) were present; (3) whether others were present during the meeting; and (4) whether other satellite projects were discussed. None of these details are provided in the Government's disclosure letter. *See* Ex. 1. These details (and others) are part-and-parcel of the *Brady* information in the Government's possession, and thus they must be disclosed. The Defense understands that the Court may permit the Government to redact certain portions of the memorandum and notes, which the Government argues implicate national security interests, but there is no justification for withholding any details about the pertinent encounter in 2000.[3]

Accordingly, the Court should order the Government to produce to the defense immediately, with appropriate redactions, (1) its interview memorandum, and (2) any notes taken by AUSA Salem, Agent Matney, Agent Louden, or any other government attendee during the Government's

---

[3] The Defense contends that it is entitled to production of the complete, unredacted memorandum and notes, which may provide important context and background to Mr. Nasseri's statements about the pertinent encounter with Mr. Modanlo. However, we acknowledge that the Court has already ruled – based on *ex parte* representations by the Government – that the balance of the information implicates national security interests and need not be disclosed for that reason. (The Court made this ruling orally during the in-Chambers conference on April 29, 2013, after hearing from the prosecutors off the record and in the absence of defense counsel and the court reporter. *See* Dkt. No. 335) In light of this prior ruling, we are asking at this time only for redacted versions of the notes and memorandum. However, we preserve our objection to the invocation by the Government and the Court of unspecified "national security concerns," without invoking CIPA and with respect to information that the Government acknowledges is <u>not</u> classified, as a basis for denying the Defense access to the complete memorandum and notes.

2010 interview of Cyrus Nasseri.

    **B.**     **An Instruction to the Jury Summarizing Mr. Nasseri's Statement Is the Best Available Substitute for His Testimony.**

An instruction to the jury summarizing Mr. Nasseri's statement to the Government is necessary and appropriate because there is no other means to get this significant exculpatory information before the jury.[4]  Technically, Mr. Nasseri's statement is hearsay that is barred by the Federal Rules of Evidence.  However, it is due to the Government's failure to timely disclose the fact of Mr. Nasseri's statement that the Defense was deprived of an opportunity to obtain his sworn testimony pursuant to Rule 15 or otherwise.  The Court has broad discretion in this situation to fashion equitable relief, including an instruction to the jury.  *See, e.g.*, *United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) ("Where the district court concludes that the government was dilatory in its compliance with *Brady*, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial.").  Under the circumstances here, an instruction from the Court is the only way to balance against the prejudice suffered by the Defense due to the Government's untimely disclosure and the Government's insistence on flooding the jury with evidence related to Mr. Nasseri.

## CONCLUSION

For the foregoing reasons, Mr. Modanlo respectfully requests that the Court grant this motion in all respects.

                                                                        Respectfully submitted,

                                                                        JAMES WYDA
                                                                        Federal Public Defender

---

[4] One other option is a stipulation.  The Defense already told the Court it was open to a stipulation.  The Defense remains open to a stipulation provided the Government produces a redacted interview memorandum that discloses the details that Mr. Nasseri provided about the encounter at issue.

<table>
<tr><td></td><td>for the District of Maryland</td></tr>
<tr><td></td><td>/s/<br>LUCIUS T. OUTLAW III<br>DOUGLAS MILLER<br>ELIZABETH G. OYER<br>Assistant Federal Public Defenders<br>100 South Charles Street<br>Tower II, 9th Floor<br>Baltimore, Maryland 21201<br>Telephone: (410) 962-3962<br>Facsimile: (410) 962-0872<br>Email: Lucius_Outlaw@fd.org</td></tr>
<tr><td>May 6, 2013</td><td>*Attorney for Defendant Nader Modanlo*</td></tr>
</table>

## CERTIFICATE OF SERVICE

  I hereby certify that on May 6, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

                /s/
                Lucius T. Outlaw III