IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | |
| | * | Crim. No. 10-0295 PJM |
| **NADER MODANLO** | * | |
| | * | |
| Defendant. | * | |

## MEMORANDUM OPINION

The Court is once again, although this time for different reasons, called to pass upon Nader Modanlo's contention that the Government is collaterally estopped from criminally prosecuting him for (1) conspiring to violate and ultimately violating the United States trade embargo on Iran, 31 C.F.R. § 560.201 *et seq.*, (2) money laundering, 18 U.S.C. § 1957(a), and (3) bankruptcy obstruction, 18 U.S.C. § 1512(c). The Court **DENIES** Modanlo's Motion to Dismiss the Third Superseding Indictment as Barred by Article IV of the United States Constitution (Paper No. 323).[1]

I.

The factual background of this case is set forth in *United States v. Modanlo*, -- F. Supp. 2d --, 2013 WL 1856356 (D. Md. May 1, 2013). To reprise: Modanlo is alleged to have "brokered an illegal deal between representatives of the Iranian Government and POLYOT, a Russian state-owned aerospace enterprise company, for the design, construction, and launch of a small, low-earth orbiting satellite and its accompanying ground station." *Id.* at *1. In exchange for (1) brokering the deal, and (2) attempting to obtain Turkish telecommunications licenses,

---

[1] Modanlo's title misstates the appropriate basis for his Motion. The only source of law that requires federal courts to observe the preclusive effects of state court judgments is 28 U.S.C. § 1738, not Article IV of the U.S. Constitution. *See* 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4469 (2d ed. 2002) ("The Constitutional clause does not speak directly to the federal courts, and it is only the statute and common law that extend the full-faith-and-credit obligation [to] federal courts.").

1

Modanlo was paid $10,000,000, transmitted to him via a Swiss company that was a front for the Iranian Government. *Id.* at *1. The Government alleges that Modanlo helped form the Swiss front company, and then lied about his participation in its formation during bankruptcy proceedings. *Id.*

Modanlo previously contended that the Government was collaterally estopped from prosecuting him for obstruction of bankruptcy proceedings because, in his view, the bankruptcy court had already decided that issue in his favor when the United States Trustee raised similar allegations against him during the bankruptcy proceedings in question. The Court disagreed, finding that (1) the bankruptcy court never actually decided the issue of whether Modanlo obstructed the bankruptcy proceedings, and (2) the issue of whether Modanlo obstructed the bankruptcy proceedings was not necessary to the bankruptcy court's resolution of any of the issues before it. *See id.* at *5. The Court noted that it was not necessary to resolve whether the Government (through the United States Attorney) and the U.S. Trustee were similarly situated for purposes of the estoppel analysis. *Id.*

Modanlo's current contention is that all the allegations put forward by the Government in the present case are identical to those previously litigated when Modanlo was sued by his business partners and investors in a shareholder derivative action in the Circuit Court for Montgomery County, Maryland ("the State Court Litigation"). *See Schettino, et al. v. Modanlo, et al.*, 2005 WL 914376 (Mont. Co. Cir. Ct. Jan. 4, 2005). *See also In re Modanlo*, 342 B.R. 230, 231–32 (D. Md. 2006) (describing the State Court Litigation). During that litigation, Modanlo's adversaries accused him of being involved in nefarious dealings with Iran and Russia, even going so far as to ask the state court to refer him to the authorities. Although he points to no

specific finding as to these allegations by the state court, Modanlo argues that the Government is nonetheless collaterally estopped from relitigating them there.

The Government rejects this proposition lock, stock, and barrel.

II.

Collateral estoppel has four elements: (1) the issue in the prior adjudication must be identical to the one in the present action; (2) the prior adjudication must have resulted in a final judgment on the merits; (3) the party against whom estoppel is being sought must have been a party to the prior adjudication or in privity with a party to the prior adjudication; and (4) the party against whom estoppel is being sought must have been given a fair opportunity to be heard on the allegedly preclusive issue. *Cosby v. Dep't of Human Resources*, 42 A.3d 596, 602 (Md. 2012).[2] *See also Modanlo*, -- F. Supp. 2d --, 2013 WL 1856356, at **3 (D. Md. May 1, 2013) (applying federal common law).

Modanlo's claim falters most clearly on the third element, the identity or "privity" requirement. With respect to that element, the test "is one of substance, not form." *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir. 1984). Maryland courts focus on "the nature of the interests binding the two parties, and, correspondingly, whether they share the same incentive in their separate litigation attempts." *Warner v. German*, 642 A.2d 239, 243–44 (Md. Ct. Spec. App. 1994).

It is undisputed that the party against whom estoppel is being sought – the United States Attorney's Office – was not party to the State Court Litigation. Moreover, Modanlo does not

---

[2] The Court applies Maryland's law of collateral estoppel. 28 U.S.C. § 1738 ("Such . . . judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have *by law or usage in the courts of such State, Territory or Possession from which they are taken*.") (emphasis added); *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 127 (4th Cir. 2000) (noting that 28 U.S.C. § 1738 requires application of state law of preclusion).

argue that the U.S. Attorney is in privity with the investors and business partners who were party to the State Court Litigation.[3]

Instead, Modanlo's argument is that "the Department of Justice, through the United States Trustee's Office, was fully represented at any stage" of the State Court Litigation. He submits that the U.S. Trustee was "party" to the State Court Litigation because he was in bankruptcy at the time, and the U.S. Trustee was charged with administering his estate. *See* 11 U.S.C. § 307 ("The United States trustee may raise and may appear and be heard on any issue in any case or proceeding under this title[.]") As the Court sees it, Modanlo is actually making two arguments: first, that the U.S. Trustee and the U.S. Attorney are the same party because they are both divisions of the Department of Justice; and second, that the U.S. Attorney is in privity with the U.S. Trustee. Because the U.S. Trustee opted not to participate in the State Court Litigation, says Modanlo, the U.S. Attorney's Office "waived its right to relitigate the matter and is bound" by the judgments of the State Court.

The Court finds neither argument supported by the record, case law, statutes, or common sense. It finds, for purposes of collateral estoppel, that the U.S. Attorney is not the same party as nor is it in privity with the U.S. Trustee.[4]

---

[3] Such an argument would in any event be unpersuasive. The private litigants in the State Court Litigation, Modanlo's shareholders and business partners, are too different from the U.S. Attorney to be considered privies: they had personal financial interests at stake in the State Court Litigation, whereas the U.S. Attorney was pursuing the public's interest in ensuring enforcement of federal criminal law; the private litigants did not have the resources to adequately investigate a conspiratorial fraud such as the one alleged in this case, whereas the U.S. Attorney's Office brings with it the full investigative powers of the Department of Homeland Security, the Treasury Department, the Defense Department, and the Grand Jury. These differences conclusively establish that the private litigants and the U.S. Attorney "represent distinct interests" pursued in different fora, and therefore would not be privies. *See Jones v. S.E.C.*, 115 F.3d 1173, 1180 (4th Cir. 1997) (holding that the National Association of Securities Dealers and the Securities and Exchange Commission, although both charged with maintaining the integrity of the markets, were not in privity because they "represent distinct interests" and have differing powers to effectuate their goals).

[4] Although today's holding is technically a question of Maryland law, it reinforces the Court's earlier ruling that the bankruptcy court's findings do not collaterally estop the Government from criminally prosecuting Modanlo for obstruction of bankruptcy proceedings as a matter of federal common law; for the sake of completeness, the Court

While sub-divisions within the same federal department *may* be in privity with one another, that is not automatically the case; the key is whether "in the earlier litigation the representative of the United States had authority to represent its interests in a final adjudication of the issue in controversy." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402–03 (1940). For example, in *United States v. Hickey*, the Ninth Circuit held that the Securities and Exchange Commission and the United States Attorney were "not the same party" for purposes of preclusion because the SEC "was not acting as the federal sovereign vindicating the criminal law of the United States." 367 F.3d 888, 893 (9th Cir. 2004) (internal quotation and citation omitted). Similarly, in *United States v. Alky Enterprises, Inc.*, the First Circuit held that the Interstate Commerce Commission was not in privity with the United States Attorney General for preclusion purposes because the former "did not have the statutory authority to represent" the interests of the latter. 969 F.2d 1309, 1314–15 (1st Cir. 1992).

Here, as in *Alky Enterprises* and *Hickey*, the U.S. Trustee and the U.S. Attorney are neither the same party nor in privity with one another because they operate pursuant to completely different statutory purposes, powers, and interests. "U.S. Trustees are officers of the Department of Justice who protect the public interest by aiding bankruptcy judges in monitoring certain aspects of bankruptcy proceedings," *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir. 2003). The U.S. Attorney, on the other hand, is charged with prosecuting and defending, on behalf of the United States, certain types of criminal and civil cases, 28 U.S.C. § 547. Their agendas are distinct; the U.S. Trustee is under a statutory obligation to notify the U.S. Attorney of potential criminal matters. 28 U.S.C. § 586(a)(3)(F). Indeed, given that federal law mandates a clear division of labor between civil bankruptcy administration and federal criminal

---

suggests that these two opinions should be read in tandem. *See United States v. Modanlo*, -- F. Supp. 2d --, 2013 WL 1856356, at *3 n. 4 (D. Md. May 1, 2013).

prosecution, estopping the U.S. Attorney from criminally prosecuting Modanlo because the U.S. Trustee was (arguably) a party to the State Court Litigation would be explicitly contrary to federal law.

Modanlo makes much of the proposition that the U.S. Trustee should be deemed to have been constructively aware of the Iran-Russia brokering allegations against him while the U.S. Attorney was investigating him as to those matters. This argument cuts no ice. With certain excepted circumstances not relevant here, the U.S. Attorney's Office is free to proceed with a criminal prosecution whenever it is prepared to do so; it is irrelevant that another sub-division of the Justice Department may have become involved in (or may have not become involved in) prior litigation in which a private plaintiff's allegations happened to track those the Government was investigating. *See United States v. Kordel*, 397 U.S. 1, 11 (1970) ("It would stultify enforcement of federal law to require a governmental agency . . . invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.").

From a policy standpoint, admitting Modanlo's argument would imperil, by way of collateral estoppel and res judicata, virtually every criminal prosecution alleging conspiratorial fraud where a civil litigant or a federal agency in previous litigation suspected or alleged the same fraud in some litigation but was unable to investigate it or prove it. Fraud, particularly conspiratorial fraud, is difficult to prove precisely because conspirators typically attempt to cover their tracks: they often speak in code, avoid creating documentation, use front companies, and engage in manifold deceptions in an effort to obfuscate the true purpose of the fraud. Civil litigants, even with the tools of discovery, quite simply, do not possess the breadth or depth of investigative power necessary to unearth these types of schemes. That power, which includes

obtaining search warrants, conducting surprise raids, working with foreign law enforcement agencies, and using the threat of criminal prosecution as a device to obtain cooperation from informants, is reserved exclusively for law enforcement and the U.S. Attorney. Modanlo seeks to use a failed and incomplete attempt by civil litigants to prove allegations of fraud in prior litigation as a bar to federal criminal prosecution based on the same allegations. Such an outcome cannot be countenanced.

For these reasons, Modanlo's Motion to Dismiss the Third Superseding Indictment as Barred by Article IV of the United States Constitution (Paper No. 323) is **DENIED**.

A separate Order will **ISSUE**.

                                                                      /s/
                                      **PETER J. MESSITTE**
                              **UNITED STATES DISTRICT JUDGE**

**Date: June 13, 2013**