# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. PJM 10-0295 |
| | * | |
| NADER MODANLO | * | |
| | * | |
| Defendant | * | |

## MEMORANDUM OPINION AND ORDER

### I.

Defendant Nader Modanlo has filed a Motion for Release Pending Appeal in the captioned case. The Government opposes the motion. For the following reasons the Court denies the motion.

After a jury trial lasting 27 days, Modanlo was convicted of the following offenses: one count of conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), in violation of 18 U.S.C. § 371 (Count 1); two counts of substantive violations of IEEPA, in violation of 50 U.S.C. § 1705(b) (Counts 3-4); six counts of money laundering, in violation of 18 U.S.C. §§ 1956(a)(2)(A) (Count 5) and 1957 (Counts 6-10); and one count of obstruction of official proceedings – specifically, bankruptcy court proceedings – in violation of 18 U.S.C. § 1512(c)(2) (Count 11).

The Court subsequently sentenced Defendant to 96 months imprisonment – that is, concurrent sentences of 96 months on nine counts of conviction and 60 months (the

statutory maximum) concurrent on the remaining count – followed by three years of supervised release.  The Court also imposed special assessment fees and entered a criminal forfeiture order.

On January 17, Modanlo filed the instant motion.  He contends that he is an appropriate candidate for release pending appeal.  The Court disagrees.

## II.

Rule 9 of the Federal Rules of Appellate Procedure provides that, with respect to appeals of convictions, the court should make its decision regarding release in accordance with the applicable provisions of 18 U.S.C. § 3143.

That paragraph provides in pertinent part as follows:

> (b)  **Release or detention pending appeal by the defendant.**—(1)  Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>
> (I) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

While the Court agrees that Modanlo does not pose a danger to the safety of another person or the community, it concludes that he has not proven by clear and convincing evidence that he is not likely to flee if released. Moreover, the Court does not find that the appeal is not for the purpose of delay nor that it raises substantial questions of law or fact likely to result in either a reversal of all counts, an order for a new trial on all counts remaining if others are reversed outright, a resulting sentence that would not include a term of imprisonment, or one that would occasion a reduced term of imprisonment less than the total time of the expected duration of the appeal process.

As to the likelihood of flight:

As the Government has cogently argued, there is a great deal of "mystery money" that has characterized Defendant's access to funds in this case, the provenance of which is at best murky and the explanation of which Defendant has consistently been less than convincing.

In the first place, the underlying payment by the Iranian authorities that eventually flowed back to Defendant and his companies was of the order of ten million dollars. The ultimate distribution of that payment has never been explained to the full satisfaction to this Court. Second, despite at all relevant times living in a substantial home in the affluent Potomac area of Montgomery County, Maryland, both before and during trial Defendant availed himself of no less than three Public Defenders all at once (plus two predecessor Public Defenders), continuously alleging his inability to pay counsel.

Then, all of a sudden, following his conviction but before his sentence, Defendant was able to engage private counsel from New York for a fee that the Court understands was of the order of tens of thousands of dollars, this on the bare representation that the money came to Defendant from a relative in Iran. At the same time Defendant continues to be represented by the Public Defender (and at least one pro bono private firm) in the Fourth Circuit.

Finally it appears that the Defendant's father, who at one point or another was described as a quite well to do individual, now deceased, has left an estate of which Defendant may well be one of the beneficiaries. But the status of the father's estate and Defendant's relationship to it remains a further riddle, still to be unraveled.

Given the lengthy sentence that Defendant faces – 96 months – the Court believes that he may in fact have access to substantial funds and foreign contacts (in Iran) that would allow him to depart this country, notwithstanding his suggestion that he has unbreakable ties here.

It remains Defendant's burden to show by clear and convincing evidence that he is not a risk of flight. The Court cannot conclude that he has done so.

**III.**

Nor can the Court conclude that this appeal is not for the purpose of delay. Defendant's motion was filed some three weeks after sentencing and did not allow for the Government to file an opposition in the ordinary course, which would have come after the time that Defendant was directed to report to custody. It was at the instance of the Court *sua sponte* that the Government responded more quickly than it was obliged to, so that the Court could at least consider another side of the motion.

**IV.**

Additionally the Court concludes that there are no substantial questions of law likely to result in a sentence that does not include a term of imprisonment or a reduced sentence that would be less than the expected duration of the appeal process. And while the Court is not prepared to second-guess the Fourth Circuit over whether one or more counts of this multi-count conviction might be reversed or as to which a new trial may be ordered (insofar as the Government may be inclined to do so), the Court believes that even so there is no aggregate of substantial questions of law or fact likely to result in over-all reversal or an order for a new trial.

The Court starts with the proposition that Defendant was convicted of 10 of the 11 counts he was charged with and with respect to 9 of those counts he received concurrent sentences of 96 months, as well as, on the remaining count, the statutory maximum of 60 months concurrent.

The Court is firmly of the view that reversal or a new trial on all counts would not be the result of the appeal, which appears to be the way in which 18 U.S.C. § 3143(b) has been interpreted. *See United States v. Steinhorn*, 927 F.2d 195, 196 (4th Circuit 1991); *Morrison v. United States*, 486 U.S. 1306, 1306-07 (1988) (Rehnquist, Circuit Justice) (Defendant not entitled to remain free on bond pending consideration of his Petition for Writ of Certiorari unless the substantial question covered all convictions).

A) Defendant argues that the Court erred in not excluding certain "clearly exculpatory" evidence until trial was underway, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and Federal Rule of Criminal Procedure 16.

Specifically, after the third day of trial the Government disclosed that in 2010 Government counsel and a case agent had interviewed one Cyrus Naseri, a Co-Defendant and alleged Co-Conspirator of Defendant. The Government's disclosure was that "Naseri informed us [the Government] that in or around 2000, Modanlo told him he would not be able to help on the Mespah Satellite 'because he had a big company in the United States and could not risk it.'" April 25, 2013 letter from David Salem to Lucius Outlaw, Docket # 344-2. Defendant says this critical evidence should have been disclosed to him well before trial.

Although the Court was at first inclined to agree that a *Brady* violation might be involved, on reflection it decided that there was no surprise since the alleged statement had been made to Naseri by Defendant himself; that Naseri was equally available to Defendant as he was to the Government; that Defendant himself could not have offered in

- 6 -

evidence his own statement to Naseri (if, indeed Naseri could have) and that the disclosure was not untimely. [And, it might be added, a statement in the year 2000 was very much out of the orbit of the relevant dates in this prosecution.]

But even assuming there was a *Brady* violation, the Court is unable to conclude that the outcome of the case would have differed. Among much other incriminating evidence, a co-worker of Defendant, Yakov Segel, kept a file marked "Nader" at his home which contained numerous documents related to the Iranian satellite program, a document which had been marked up by Modanlo.

Moreover, as the Government points out, even if the so-called Naseri violation was deemed to have tainted all 9 of the 10 counts of conviction, as to count 11, the bankruptcy fraud count, no false statement as to which Modanlo was convicted in any way related to anything that Naseri might have said or done.

In sum, there is no substantial question here involving the Naseri statement in the sense of FRAP 9.

B) Nor does the admission of the Swiss MLAT documents constitute a substantial question. Quite simply, official certification of the Swiss MLAT documents by Swiss lawyer Urs Hausheer, was certain. Although he was in many respects evasive during his deposition taken in Switzerland, he nonetheless had officially certified that the documents in question had been maintained at his law firm. Insofar as Defendant tried to urge that Hausheer felt he was not "freely" certifying the records, the Court, while resistant to that

line of inquiry, still permitted Defendant to raise points going to Hausheer's personal familiarity with the records.

C) The Court also finds without substance Modanlo's claim that the Court lacked jurisdiction to try him because he interposed an interlocutory appeal to the Fourth Circuit relative to the supposed preclusive effect of prior proceedings before the bankruptcy court.

While the Court may have remarked at one point that the issue was "interesting," it ultimately concluded that in fact there had never been a prior adjudication of any allegations of fraud against Defendant in the bankruptcy proceeding and that therefore there was no possible issue of double jeopardy when the criminal charge based on those allegations was brought in the present case.

It bears noting, moreover, that the Fourth Circuit itself, on Defendant's emergency appeal, declined to block the proceedings in this Court from going forward.

D) The Court also rejects Defendant's claim that it erred in denying his motion to dismiss counts 1 to 10 as time barred or the issues present substantial questions likely to result in reversal, a new trial, etc.

As the Court understands Defendant's argument, he is contending that the Government did not charge the precise criminal conduct that appeared in its MLAT request to Switzerland, but also charged violations of the Arms Export Control Act, 27 U.S.C. § 2278 *et seq*. The Court finds no error in respect of this. The Court has located no authority involving an MLAT request where only specific offenses raised in the

request defined the universe of potentially chargeable crimes. *See U.S. v. Ratti*, 365 F.Supp.2d 649, 656 (D. Md. 2005). At any rate, the MLAT request clearly embraced a range of possible illegality in connection with Defendant's dealings with Iran.

E) Finally, the exclusion of evidence supposedly favorable to Defendant does not constitute a substantial question.

Defendant claims, for instance, that the Court prevented him from asking an IRS special agent about an IRS audit which Defendant claims found him to have properly reported his assets. He also claims that the Court kept him from asking an Office of Foreign Assets Control ("OFAC") representative about differences in the availability of information with respect to regulations concerning Iran or from introducing aspects of OFAC's website. Further, he challenges the Court's exclusion of a 2001 Congressional report about OFAC's need to increase the transparency of its operations. Finally, there is suggestion that the Court failed to permit Defendant to examine Bankruptcy Trustee Chris Mead "on topics related to Mead's failed investigation of him."

Apart from the fact that Defendant has been less than detailed in support of his arguments, the Court essentially found the proffered evidence as irrelevant or immaterial.

As to the failure to permit the introduction of the IRS audit in 2005, the Court held the IRS audit was irrelevant to a criminal proceeding focusing on whether Defendant had properly accounted for his assets in the bankruptcy proceeding.

OFAC's website information as of 2001, even if it contained some relevant information, had no meaning in the context of a proceeding looking at what Defendant

(who chose not to testify) may or may not have known at the time of his activities in this case.

A Congressional report about the need for transparency of a Government agency was well outside the ambit of what Defendant may or may not have known in this case.

Finally, Bankruptcy Trustee Chris Mead's investigation of Defendant – whether or not he turned up evidence of wrongdoing by Modanlo within that proceeding – could neither disprove nor diminish the evidence that the U.S. Attorney's Office might subsequently unearth based on its MLAT requests and the like, devices obviously unavailable to Mead in the bankruptcy proceeding.

Even if these evidentiary rulings were erroneous – and the Court is of the opinion that they were not – they certainly are not substantial questions of the order that Rule 9 of the Rules of Appellate Procedure demands.

In conclusion – even if debatably erroneous – no questions involved here, either individually or collectively, are sufficiently substantial in nature to justify deferring imprisonment of Defendant while his appeal pends.

The Motion for Release Pending Appeal will be **DENIED**.

So ordered this 31st day of January, 2014.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**